HEATHER D. HEARNE, SBN 254496
hdh@kullmanlaw.com
**THE KULLMAN FIRM**
A Professional Law Corporation
4605 Bluebonnet Blvd., Suite A
Baton Rouge, LA 70809
Tel.: (225) 906-4245
Fax: (225) 906-4230

ROBERT P. LOMBARDI, *pro hac vice forthcoming*
rpl@kullmanlaw.com
WILLIAM H. PAYNE, *pro hac vice forthcoming*
whp@kullmanlaw.com
**THE KULLMAN FIRM**
A Professional Law Corporation
1100 Poydras Street, Suite 1600
New Orleans, LA 70163
Tel: (504) 524-4162
Fax: (504) 596-4114

Attorneys for Defendants
SCHLUMBERGER LIFT SOLUTIONS LLC,
SCHLUMBERGER ROD LIFT, INC., and
SCHLUMBERGER TECHNOLOGY CORP.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTOBAL GARCIA, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCHLUMBERGER LIFT SOLUTIONS LLC, a Delaware Limited Liability Company; SCHLUMBERGER ROD LIFT, INC., a Delaware Corporation; SCHLUMBERGER TECHNOLOGY CORPORATION, a Texas Corporation and Does 1 through 10,<br><br>Defendants. | CASE NO.<br><br>**DEFENDANTS SCHLUMBERGER LIFT SOLUTIONS, LLC, SCHLUMBERGER ROD LIFT, INC., AND SCHLUMBERGER TECHNOLOGY CORP. NOTICE OF REMOVAL**<br><br>[Declarations of Heather Hearne, Sarah Sackewtiz, and Gina Karathanos filed concurrently herewith]<br><br>[Kern County Superior Court, Case No. BCV-18-101388]<br><br>Class Action |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF CRISTOBAL GARCIA AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Schlumberger Lift Solutions, LCC, Schlumberger Rod Lift, Inc., and Schlumberger Technology Corp. ("Defendants") pursuant to 28 U.S.C. §§ 1441(b) and 1446 and asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and additionally, or in the alternative, pursuant to 28 U.S.C. §§ 1441(a) and 1446 and asserting original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), hereby remove to the United States District Court for the Eastern District of California the above-captioned state court action, originally filed as Case No. BCV-18-101388 in Kern County Superior Court, State of California. Removal is proper on the following grounds:

**<u>TIMELINESS OF REMOVAL</u>**

1.     Plaintiff Cristobal Garcia ("Plaintiff" or "Garcia") filed his complaint against Defendants Schlumberger Lift Solutions, LCC, Schlumberger Rod Lift, Inc., and Schlumberger Technology Corp. on June 5, 2018. Declaration of Heather D. Hearne ("Hearne Dec."), ¶ 3, Exh. A (Original Complaint), filed concurrently herewith. The Original Complaint was not served on Defendants. *Id.,* ¶ 3. Plaintiff filed a First Amended Complaint on August 7, 2018 ("FAC") and served it on Defendants on August 15, 2018. *Id.,* ¶ 4, Exh. B (Notice of Service).

2.     "[A] notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Defendants' notice of removal is timely pursuant to 28 U.S.C. § 1446(b) because it is filed within 30 days after service of the Amended Complaint was completed.

DEFENDANTS' NOTICE OF REMOVAL

## SUMMARY OF PLAINTIFF'S ALLEGATIONS AND

## FACTS GIVING RISE TO REMOVAL UNDER CAFA

3.     Plaintiff's Complaint alleges eight causes of action against Defendants: (1) failure to pay compensation due in violation of California Labor Code §§ 510 and 1197 and applicable Wage Order(s); (2) failure to provide compliant meal periods in violation of California Labor Code §§ 226.7 and 512 and applicable Wage Order(s); (3) failure to provide compliant rest breaks in violation of California Labor Code § 226.7 and applicable Wage Order(s); (4) failure to furnish itemized wage statements in violation of the California Labor Code § 226 and record keeping violations in violation of California Labor Code § 1174; (5) failure to pay wages timely upon termination in violation of California Labor Code § 201, *et seq*; (6) failure to indemnify business expenses in violation of California Labor Code § 2802, *et seq* and applicable Wage Order(s); (7) violation of California Business and Professions Code § 17200 *et seq*; and (8) recovery of civil penalties pursuant to the California Private Attorney General Act.  See FAC.

4.     While Defendants deny any liability in this case and believe that class treatment is completely inappropriate under the circumstances here, for purposes of the jurisdictional requirements for removal only, Defendants have a good faith basis to believe that the **allegations in Plaintiff's FAC put in controversy, in the aggregate, an amount that exceeds $5 million.** *See* 28 U.S.C.  § 1332(d)(6) (claims of individual class members set forth in the Complaint are "aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000").[1]  Because at least one plaintiff is diverse from at least one defendant and a good

---

[1]  Plaintiff alleges "Defendants have been or are the principals, officers, directors, agents, employees, representatives, and/or co-conspirators of each of the other Defendants, and in such capacity or capacities participated in the acts or conduct alleged herein and incurred liability therefore.  At an unknown time, some or all of the Defendants conspired with other Defendants to commit the wrongful acts described herein.  These wrongful acts were taken in furtherance of such conspiracy."  FAC, ¶ 7.  Plaintiff's allegations are against all Defendants acting in concert. As such, they can be aggregated for purposes of establishing the amount in controversy. *See*

DEFENDANTS' NOTICE OF REMOVAL

faith reading of the Complaint shows that the amount in controversy exceeds the sum of $5 million aggregated, federal jurisdiction is appropriate, and this action is properly removed pursuant to 28 U.S.C. § 1332(d)(6). *See also, Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) ("no anti-removal presumption attends cases involving CAFA") (*quoting Dart Cherokee Basin Operating Co., LLC v Owens*, 136 S.Ct. 547 (2014).

5.    As of the date of the filing of this Notice, all Defendants have been served and consent to the filing of this Notice. *See* Hearne Dec., ¶ 5.

**A.    Minimal Diversity Exists.**

6.    To meet CAFA's diversity requirement, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "Thus, under CAFA complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) (citations omitted).

7.    Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." A corporation's principal place of business is identified pursuant to the "nerve center" test, set forth in *Hertz Corp. v. Friend,* 130 S.Ct. 1181 (2010). Under the "nerve center" test, a company's principal place of business is in the state "where the corporation's high-level officers direct, control, and coordinate the corporation's activities"- typically the corporation's headquarters. *Id.* at 1186.

8    Schlumberger Technology Corporation ("STC") is a corporation organized under the laws of the State of Texas and maintains its executive and administrative operations at its

*Winner's Circle of Las Vegas, Inc. v. AMI Franchising, Inc.,* 916 F.Supp. 1024, 1028 (D.Nev. 1996) (citing *Libby, McNeill, & Libby v. City Nat. Bank,* 592 F.2d 504, 510 (9th Cir. 1978)); *see also, United States v. Southern Pacific Transp. Co.,* 543 F.2d 676, 682-83 (9th Cir. 1976) and FAC, Exh. 1 at I.D ("[Defendants] are the joint employers of Cristobal Garcia and the Aggrieved Employees.").

headquarters in Sugarland, Texas.  FAC, ¶ 4.  Consequently, STC is a citizen of Texas.  *Hertz,* 130 S.Ct. at 1186.

9.    Schlumberger Rod Lift, Inc. ("Schlumberger Rod") is a corporation organized under the laws of the State of Delaware and maintains its executive and administrative operations at its headquarters in Sugarland, Texas.  FAC, ¶ 3.  Consequently, Schlumberger Rod is a citizen of Delaware and Texas.  *Hertz,* 130 S.Ct. at 1186.

10.    Schlumberger Lift Solutions, LCC ("SLS"), is a limited liability company formed in the State of Delaware with its headquarters in Houston, Texas.  FAC, ¶ 2.  SLS is wholly owned by STC.  Declaration of Gina Karathanos, ¶ 5.  "[A]n LLC is a citizen of every state of which its owners/members are citizens."  *Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir., 2006).[2]  Consequently, SLS is a citizen of Texas.

11.    As set forth above, none of the defendants in this action are citizens of California. 28 U.S.C. § 1441(b)(2).[3]

12.    For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983).  "A person is 'domiciled' in a location where he or she has established a fixed habitation or abode of a particular place, and [intends] to remain there permanently and/or indefinitely."  *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986) (citations and quotations omitted).  A party's residence is *prima facie* evidence of his domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *see also, Ervin v. Ballard Marine Construction, Inc.,* No. 16-cv-02931-WHO, 2015 WL 4239710 (N.D. Cal., Aug. 11, 2016).  Plaintiff's Complaint states that he is "a resident

---

[2]  Plaintiff also named as defendants Does 1 through 10.  *See* FAC.  For purposes of removal jurisdiction, the "citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(b).
[3]  With respect to Plaintiff's naming of "Doe" defendants, for purposes of removal, "the citizenship of defendants sued under fictitious names *shall be* disregarded."  28 U.S.C. § 1441(b)(1).

DEFENDANTS' NOTICE OF REMOVAL

of California and was primarily employed in Kern County by Defendants." FAC, ¶ 1. As such, for diversity purposes, Plaintiff is a "citizen" of California.

**B.    Plaintiff Alleges a Putative Class of More Than 100 Individuals**

13.    The putative class alleged in Plaintiff's FAC broadly encompasses "[a]ll non-exempt employees of any of the Defendants who, at any time within the period beginning four years prior to the filing of this action through the date of class certification, worked in California." FAC, ¶ 8. For purposes of the removal calculations shown below, Defendants focus only on employees of SRL's KBA Division (previously part of SLS), which was Plaintiff's direct employer. Declaration of Sarah Sackewitz ("Sackewitz Dec."), ¶¶ 3, 10. Nonetheless, given Plaintiff's attempt to include "all non-exempt employees of any ... Defendant," the amount in controversy may be substantial larger than evidenced herein.

14.    Defendants have confirmed that KBA[4] employed approximately 303 non-exempt employees in California during the four-year period pre-dating the filing of this action (June 5, 2014 - Present). *See* Sackewitz Dec., ¶ 3. Therefore, Plaintiff's FAC alleges "a putative class of at least 100 persons." Cal. Labor Code § 1332(d)(5)(B).

**C.    The Amount Placed in Controversy By The FAC Exceeds $5 Million Aggregated.**

15.    Where a complaint "fails to allege a sufficiently specific total amount in controversy ... [courts] apply the preponderance of the evidence burden of proof to the removing defendant." *Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 701 (9th Cir. 2007). In his FAC, Plaintiff seeks damages for, without limitation, unpaid wages, compensatory damages according to proof, penalties pursuant to Labor Code Sections 203, 226(e), and the PAGA, restitution, prejudgment interest, attorneys' fees and costs, and punitive damages. "It is clear that in the

---

[4] As noted above, KBA is currently a division of SRL and prior to January 2018, was a division of SLS. Sackewitz Decl., ¶ 3. For ease of reference herein, "KBA" refers to this division throughout the relevant time period. Plaintiff's (and the Class Members') actual employer prior to January 2018 was SLS. *Id.* Since January 2018, their employer has been SRL. *Id.*

context of removal, even before CAFA, plaintiff's allegation simply does not control or end the amount in controversy analysis[,] [rather] … the court must assess jurisdiction under CAFA to determine whether the amount in controversy requirement of § 1332(d) has been met." *Yeroushalmi v. Blockbuster Inc.,* Case No. CV 05-255-AHM(RCX), 2005 WL 2083008, at *2 (C.D. Cal. July 11, 2005). In light of the FAC's ambiguity regarding the amount placed in controversy by the claims contained therein, the preponderance of the evidence standard applies to Defendants' Notice of Removal. *See, e.g., Guglielmino,* 506 F.3d at 700 (applying the preponderance of the evidence standard where plaintiff's complaint alleged that "damages to each Plaintiff are less than $75,000").

16.     The preponderance standard is not a "daunting" standard. *Muniz v. Pilot Travel Centers LLC,* No. S-07-0325, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007). Defendants are not obligated to "research, state, and prove the plaintiff's claims for damages." *Id. (citation and quotation omitted); see also, Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy"). A removing defendant must simply produce underlying facts or evidence demonstrating **more likely than not** the amount in controversy exceeds the threshold amount. *See Sanchez v. Monumental Life Ins.,* 102 F.3d 398, 404 (9th Cir. 1996) ("[D]efendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds [the threshold] amount.") (citation and quotation omitted); *Rippee v. Boston Market Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (noting that the inquiry is what amount is "put in controversy" by the plaintiff's complaint, not what a defendant will actually owe).

17.     Here, considering the FAC's allegations, types of damages sought, and similar cases, it is apparent that the amount in controversy exceeds $5 million for the reasons indicated below.

DEFENDANTS' NOTICE OF REMOVAL

i. **Plaintiff's Claim for Unpaid Wages – Office Duties and Travel Time.**

18. Plaintiff alleges he and all Class Members who were required to ride company-provided transportation are owed unpaid wages for the 1.5 to 2 hours they spent riding the bus daily. FAC, ¶ 23 and Exh. 1 thereto at pp. 2-5. Additionally, Plaintiff contends that some Class Members were required to engage in office duties for 5 to 10 minutes before being permitted to clock in. *Id.,* ¶ 22. Based on Defendants' records, 61 employees of KBA, on average, regularly rode the company-provided transportation each year between 2014 and 2018. Sackewitz Dec., ¶ 4. Regular rates for Class Members during the Class Period (four years preceding the filing of Plaintiff's Complaint through August 31, 2018) range from $13/hour to $35/hour, with an average of $20.39/hour. *Id.,* ¶ 5. The 303 Class Members worked a total of at least 37,613 weeks during the Class Period. *Id.,* ¶ 6. Class Members typically worked shifts of 8 to 10 hours/day (excluding travel time to/from the job site and the alleged 5-10 minutes of pre-shift office work), five (5) days per week. *Id.*

19. Defendants aver that riding company-provided transportation to/from work sites was optional. *Id.,* ¶ 4. However, if, as Plaintiff alleges, employees should have been paid for this travel time, and further, if, as alleged, that travel time was in excess of the employees' regular eight-hour shifts, then any compensation allegedly owed for this time should have been paid at the employees' overtime rates. Cal. Labor Code § 510(a) (hours worked in excess of eight (8) in a day are paid at the overtime rate); Sackewitz Dec., ¶ 4. Even assuming that only one-fifth[5] of the total weeks worked by Class Members resulted in unpaid travel time—a highly-conservative estimate, at an average regular rate of $20.39/hour, this claim places *at least* **$1,725,734.85 at**

---

[5] Though it is unlikely that the average of 61 employees per year riding the company-provided transportation were the same 61 individuals from year to year, for purposes of these conservative estimations, Defendants assume without admitting that these 61 employees represent the total number of KBA employees who rode the bus during the entire Class Period. This equates to approximately 20% of the class. Extrapolating this assumption to weeks worked, Defendants again assume, without admitting, that this 20% of the class worked only 20% of the total weeks worked by Class Members.

**issue**: $30.59[6] *times* 1.5 hours/day[7] *times* 5 days *times* 7,522[8] weeks *equals* $1,725,734.85. Given the highly-conservative estimates used in this calculation, the actual amount placed in controversy by Plaintiff's first cause of action, is in all likelihood, substantially higher.

        **ii.**     **Untimely, Short and/or Interrupted Meal Periods.**

      20.     Plaintiff's Complaint also seeks penalties for untimely, short, and/or interrupted meal periods. FAC, ¶¶ 42-53. This claim is in part derived from Plaintiff's first cause of action related to unpaid travel time, based on the theory that if Plaintiff's (and aggrieved employees') time spent being transported to/from the work sites was compensable, then *ipsofacto,* their meal periods, were not provided timely. Cal. Lab. Code § 512. Additionally, Plaintiff argues that his (and Class Members') meal periods were not "duty free" because (1) he and Class Members were required to "monitor their radios and/or company cell phones throughout their breaks and therefore failed to relieve employees of all duties[,]" (2) Defendants "did not permit Plaintiff and Class members to leave the workplace during purported meal breaks and did not count their time worked through breaks for regular and overtime wage purposes[,]" and (3) Class Members occasionally worked in excess of 10 hours per workday and were therefore entitled to take a second meal period on those days, which, to the extent it was provided at all, was not timely nor duty free FAC, ¶¶ 49-51.[9]

      21.     Labor Code Section 226.7 provides that where an employer "fails to provide an employee a meal period or rest period" in accordance with the law, the employer "shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal period or rest period is not provided." Cal. Lab. Code § 226.7(b).

---

[6] $20.39 *times* 1.5 *equals* an average overtime rate of $30.59.
[7] Minimum amount of time Plaintiff alleges that Class Members spent in the company van. FAC, ¶ 23 ("such transport generally took approximately 45 minutes to one hour" – each direction).
[8] 37,613 total weeks worked *divided by* 5 *equals* 7,522.6 weeks.
[9] FAC, ¶ 47 ("even based exclusively on Plaintiff and other Class members' deficient clock times, Defendant regularly failed to provide them with meal breaks within the first five hours of their work").

     DEFENDANTS' NOTICE OF REMOVAL

22.     Assuming for purposes of removal only that Defendants failed to provide Class Members lawful meal periods two of their five work days each week—again, a conservative estimate considering the multitude of ways in which Plaintiff contends that Defendants failed in this regard—and relying on the average regular rate paid to Class Members during the class period, this allegation puts **an additional $1,533,858.14 at issue:** $20.39 *times* 2 days per week *times* 37,613 weeks *equals* $1,533,858.14.

23.     Further, if, as Plaintiff alleges, his (and Class Members') meal periods were not duty free despite the fact that they were not paid for this time, then the compensation owed to them for those 30 minutes, which would have been in addition to their regular 8-hour-plus shifts and the alleged 1.5 to 2 hours of daily travel time—should have been compensated at the employees' overtime rates (or potentially even their double time rates)[10]. Assuming that Class Members worked through no more than two meal periods each work week in addition to their regular eight-hour days, this allegation places **an additional $1,150,581.67[11] at issue, for a grand total of $2,684,439.81** for Plaintiff's second cause of action.

### iii.     <u>Untimely, Short and/or Interrupted Rest Breaks.</u>

24.     In addition to penalties for late, short, and interrupted meal periods, Plaintiff also alleges that he and Class Members are entitled to penalties for late, short, and interrupted rest breaks.  Cal. Lab. Code Section 226.7(b).  As with meal periods, Plaintiff contends that the rest breaks provided were late, short, and interrupted/not duty free.  FAC, ¶¶ 54-61.  Indeed, Plaintiff's FAC specifically alleges that Defendants are liable for one hour's pay "for ev*ery shift* worked by Plaintiff and other Class Members." *Id.*, ¶ 58.

---

[10] Cal Labor Code § 510(a); Cal. Code Regs. tit. 8, § 11160 (Wage Order 16), ¶ 3(A)(1)(b).
[11] $30.59 (average OT rate) *times* 0.5 *times* 2 (number of 30-minute meal periods per week) *times* 37,613 weeks *equals* $1,150,581.67.

DEFENDANTS' NOTICE OF REMOVAL

25.    Even assuming only four (4) violations per week for all 37,613 weeks and all 303 Class Members (to account for vacation days and other schedule variations), Plaintiff's third cause of action places **an additional $3,067,716.28 at issue**: $20.39 average regular rate *times* four (4) days per week *times* 37,613 weeks *equals* $3,067,716.28.

### iv.    Wage statement penalties (Cal. Labor Code § 226)

26.    Plaintiff alleges that Defendants "failed to maintain and furnish Plaintiff and Class Members with accurate and complete wage statements regarding their gross wages earned, total hours worked, total net wages earned, the name and address of the entity that is the legal employer, and all applicable hourly rates in effect…" as required under Labor Code Section 226. FAC, ¶ 63.  Damages under Labor Code Section 226 provide for the greater of actual damages or $50 per initial violation per person and $100 per subsequent violation per person, with a maximum recovery of $4,000 per person.  Cal. Labor Code § 226(e) ("An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)").

27.    Here, Defendants have confirmed that 210 Class Members were issued a total of more than 5,240 paychecks during the one-year period prior to the filing of Plaintiff's Original Complaint.  Sackewitz Dec., ¶ 7.  These individuals worked more than 48 weeks on average during the class period, which equates to 24 paychecks per person.  *Id.*  Applying the average of 24 paychecks across all 210 Class Members employed during the one-year limitations period yields a total of 5,040 paychecks—two hundred less than were actually issued.  With $50 for each initial violation and $100 for each subsequent violation, this cause of action places **more than**

**$493,500 at issue**.[12]

28.    Additionally, and though unclear from the FAC, Plaintiff also appears to allege that Defendants have violated Labor Code Section 1174.5 as to all Class Members.  FAC, ¶ 66. Claims for statutory penalties have a one-year limitations period.  Cal. Civ. Proc. Code § 340. KBA employed 210 Class Members during the one-year period preceding the filing of this action. With a civil penalty of $500 per person, this claim puts **another $105,000 at issue**.[13]

### v.    Waiting Time Penalties.

29.    Plaintiff's FAC seeks waiting time penalties based on Defendants' alleged failure to pay Plaintiff and Class Members' all wages owed at termination.  FAC, ¶¶ 70-77.  The statute of limitations for penalties under Labor Code Section 203 is one year where there is no underlying claim for unpaid wages and three years where a claim for unpaid wages is alleged. *See Pineda v. Bank of Am., N.A.,* 50 Cal. 4th 1389, 1399 (2010).  Because Plaintiff's first and second causes of action allege claims for unpaid wages, for purposes of removal only, Defendant assumes that a three-year limitations period applies to this claim.  Penalties under Section 203 are calculated at the employee's daily rate of pay at termination for a maximum of 30 days.  Cal. Lab. Code § 203(a).

30.    Here Class Members regularly worked 8-10 hours per day depending on whether travel time is considered compensatory.  Sackewitz Dec., ¶ 6.  During the three years prior to the filing of Plaintiff's Complaint through August 31, 2018, 137 Class Members were terminated— all of them more than 30 days ago. *Id.,* ¶ 8. Assuming these individuals regularly worked 8 hours/day (again conservative in light of Plaintiff's allegations), and further assuming that none of them were high-earners and instead relying on the average regular rate of $20.39/hour, this

---

[12] 210 initial violations at $50 each (subtotal $10,500) plus 4,830 subsequent violations at $100 each (subtotal $483,000) *equals* $493,500.
[13] 210 employees *times* $500 per person *equals* $105,000.

DEFENDANTS' NOTICE OF REMOVAL

translates to an average day rate of $163.12.[14]  With the maximum penalties for 137 employees at a day rate of $163.12 times 30 days, Plaintiff's fifth cause of action places **at least $670,423.20 at issue.**[15]

### vii.    Summary

32.    Even based on the most conservative of estimates, and further, without taking into account Plaintiffs' Sixth Cause of Action, attorneys' fees, PAGA penalties, and/or punitive damages, all of which can be substantial, with 303 putative class members, there can be no doubt or dispute that the amount in controversy—more than $ 8.5 million—meets the jurisdictional threshold for removal under 28 U.S.C. § 1332(d).

| Category of Damages | Amount in Controversy |
|---|---|
| Unpaid Wages for Travel Time | $ 1,725,734 |
| Meal Period Penalties | $ 1,533,858 |
| Unpaid Meal Periods | $ 1,150,581 |
| Rest Period Penalties | $ 3,067,716 |
| Wage Statement Penalties | $ 493,500 |
| Business Records Violation | $ 105,000 |
| Waiting Time Penalties | $ 670,423 |
| **TOTAL** | $ 8,746,812 |

For these reasons, and the diversity of Defendants and Plaintiff, removal is appropriate under 28 U.S.C. § 1332(d).

### SUMMARY OF FACTS GIVING RISE TO REMOVAL SECTION 1332(a)

33.    Additionally, and/or in the alternative, Defendants also have a good faith basis to believe that removal is proper under 28 USC § 1332(a) as complete diversity exists and the

---

[14] $20.39 *times* 8 hours *equals* average day rate of $163.12.
[15] 137 terminated Class Members *times* $163.12 average day rate *times* 30 days *equals* $670,423.20.

DEFENDANTS' NOTICE OF REMOVAL

1  amount placed in controversy by Plaintiff's FAC exceeds $75,000. 28 U.S.C. § 1332(a). Because

2  the parties and interests are diverse, and a good faith reading of the Complaint shows that the

3  amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, federal

4  jurisdiction is appropriate, and this action is also properly removed pursuant to 28 U.S.C. § 1441

5  and § 1332(a).

6

7  **A.**    **Complete Diversity Exists.**

8      34.    To remove under Section 1332(a), complete diversity must exist – meaning that no

9  Plaintiff is a citizen of the same state as any defendant. 28 U.S.C. § 1332(a); *Edrington v. Barr*,

10  No. 16-CV-07395-JSC, 2017 WL 106145, at *1 (N.D. Cal. Jan. 11, 2017). *See also,* ¶¶ 6-12,

11  *supra*. For the reasons set forth above, this requirement is satisfied.

12  **B.**    **The Amount In Controversy Exceeds $75,000.**

13      35.    Additionally, Defendants have a good-faith basis to believe that the allegations in

14  Plaintiff's Complaint put in controversy an amount in excess of $75,000. As a result of the

15  above-referenced allegations, Plaintiff seeks unpaid wages, punitive damages, a declaratory

16  judgment, fees and costs, and various penalties. See FAC at Prayer for Relief. While Defendants

17  deny any liability as to Plaintiff's claims, the Court has diversity jurisdiction under 28 U.S.C.

18  §1332(a) over Plaintiff's claims because Plaintiff is diverse from all Defendants and Plaintiff

19  alleges claims and damages that are worth more than $75,000.

20

21      36.    Plaintiff was hired on or around September 14, 2015 and was terminated on or

22  around March 30, 2018. FAC at Exh. 1 at II.A. Prior to his termination, Plaintiff worked as a

23  belt crew lead and earned an average regular rate of $15.46/hour. Sackewitz Dec., ¶ 11. His

24  regular rate at the time of his termination was $16.50/hour. *Id.*

25

26      i.    **Unpaid Wage Claim**

27      37.    According to Defendants' records, Plaintiff regularly rode the company-provided

28

transportation to/from the job sites. Sackewitz Dec., ¶ 12. Based on a review of Plaintiff's electronic time records, Defendants have determined that Plaintiff worked a total of approximately 529 shifts during his employment with KBA, at least 394 of which were in excess of eight (8) hours, without taking travel time or other alleged time worked off the clock into account. *Id.*, ¶ 13. Based on Plaintiff's average regular rate of $15.46 and assuming that Plaintiff spent no more than 1.5 hours[16] riding in company transportation each shift, Plaintiff's claim for unpaid wages related to travel time alone place **at least $11,223.96 at issue**.[17]

### ii.    Meal Period Violations

38.    For each workday in which Plaintiff's first cause of action were true, Plaintiff would be entitled to a penalty payment equal to one hour at his regular rate of pay. Further, as noted above, Plaintiff alleges that his meal periods were non-compliant for a myriad of other reasons (i.e., Plaintiff was not free to leave and the meal periods were not long enough, not timely, and/or not duty free). See FAC, ¶¶ 46-53. Based on a review of Plaintiff's electronic time records, Defendants have determined that Plaintiff worked approximately 505 shifts in excess of six hours[18] (again, excluding travel time and other alleged time worked off the clock). Sackewitz Dec., ¶ 13. In Plaintiff's case, based on his average regular rate of pay of $15.46 and 505 shifts, Plaintiff's claim with respect to meal period penalties alone places **at least $7,807.30 at issue**.[19]

---

[16] FAC, ¶ 23; *see also,* fn. 7, *supra.*

[17] Plaintiff's average regular rate of $15.46 *times* 135 shifts under 8 hours *equals* $2,087.10. Plaintiff's average overtime rate of $23.19 ($15.46 *times* 1.5) *times* 394 shifts over 8 hours *equals* $9,136.86. $2,087.10 *plus* $9,136.86 *equals* $11,223.96.

[18] Cal. Labor Code § 512(a) ("An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.").

[19] $15.46 *times* 505 shifts that were more than six hours in length *equals* $7,807.30. Notably here, if Plaintiff's travel time was compensable, as Plaintiff alleges, that would increase the number of shifts for which a meal period was required, thereby increasing the potential damages with respect to this claim.

39.     Further, if, as Plaintiff alleges, his meal periods were not duty free, he would also be entitled to compensation for that time at the applicable rate. Cal. Code Regs. tit. 8, § 11160 (Wage Order 16), ¶ 10(D) ("Unless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked."). Again, given the myriad of ways in which Plaintiff contends his meal periods were not duty-free, this claim places **an additional $7,807.30**[20] at issue, for a grand total of **$15,614.60**.

### iii.     **Rest Period Violations**

40.     Plaintiff also alleges he is entitled to penalties for late, short, and interrupted rest breaks. As noted above, Plaintiff's Complaint specifically alleges that Defendants are liable for one hour's pay for every shift he worked. FAC, ¶ 58. Based on Plaintiff's electronic time records, Defendant estimates that Plaintiff worked approximately 529 shifts during the limitations period. Sackewitz Dec., ¶ 13. Therefore, Plaintiff's third cause of action puts **$8,178.34 at issue**.[21]

### iv.     **Wage Statement Penalties**

41.     Between June 5, 2017 and his termination, Plaintiff worked 42.6 weeks for KBA, which equates to at least 21 pay periods. Sackewitz Dec., ¶ 14. Damages under Labor Code Section 226 provide for the greater of actual damages or $50 per initial violation per person and $100 per subsequent violation per person, with a maximum recovery of $4,000 per person. Cal. Labor Code § 226(e). With one (1) initial violation and 20 subsequent violations, Plaintiff's

---

[20] $15.46 (average regular rate) *times* 505 (shifts longer than six (6) hours–*without taking travel time into account*) 30-minute meal periods *equals* $7,807.30. Notably, if, as Plaintiff contends, his travel time is also compensable, these meal periods would be time worked in excess of eight (8) hours and therefore compensable at the overtime rate. See also, fn. 19, *supra.*
[21] $15.46 (average regular rate) *times* 529 shifts *equals* $8,178.34.

claim under section 226 places **$2,050** at issue.[22]

**v.    Waiting Time Penalties**

42.    Plaintiff seeks waiting time penalties based on Defendants' alleged failure to pay him all wages owed at termination. FAC, ¶ 93. Penalties under Section 203 are calculated at the employee's daily rate of pay at termination for a maximum of 30 days. Cal. Labor Code § 203(a). The statute of limitations for penalties under Labor Code Section 203 is one year where there is no underlying claim for unpaid wages and three years where a claim for unpaid wages is alleged. *Pineda v. Bank of Am., N.A.,* 50 Cal. 4th 1389, 1396 (2010).

43.    Here, Plaintiff's hourly rate at termination was $16.50, and he typically worked 9.5 to 10 eight hours/day. Sackewitz Dec., ¶¶ 11-13 and FAC, ¶ 23 and Exh. 1 thereto at pp. 2-5. This equates to a day rate of $156.75, at minimum ($16.50 *times* 9.5 hours). Plaintiff was terminated on March 30, 2018—well over 30 days ago. *Id.,* ¶ 10. As such, the maximum penalties would apply and therefore, this claim puts **at least $4,702.50 at issue.**[23]

**vi.    Reimbursement Claim**

44.    Plaintiff alleges Defendants failed to indemnify him for necessary expenditures and losses incurred by him in the discharge of their duties. Specifically, the FAC stated that "Defendants held Plaintiff ... liable for costs associated with the laundering and upkeep of those uniforms." required that employee uniforms be laundered on a weekly basis." FAC, ¶ 81. The uniforms worn by Plaintiff and class members were provided by Aramark, which charged for care and upkeep on a weekly basis. Sackewitz, ¶ 9. For the 11 pairs of pants and 11 shirts issued to Plaintiff, Defendants were charged $6-$7 per week. *Id.* Plaintiff contends that he was liable for these costs. FAC, ¶¶ 78-84. With 132 weeks worked, this claim puts **another $858 at issue.**[24]

---

[22] $50 *times* 1 *plus* $100 *times* 20 *equals* $2,050.
[23] $156.75 *times* 30 days *equals* $4,702.50.
[24] $6.50 (average between $6 and $7) *times* 132 weeks *equals* $858.

DEFENDANTS' NOTICE OF REMOVAL

### vii.    **PAGA Penalties**

45.    Under PAGA, an "aggrieved employee" may recover penalties for violations of certain labor code provisions "through a civil action ... on behalf of himself or herself and other current or former employees..." Cal. Labor Code § 2699(a). Courts routinely find that PAGA penalties can be considered in determining the amount in controversy for purposes of removal. *See Schiller v. David's Bridal, Inc.,* No. 1:10-cv-00616 AWI SKO, 2010 WL 2793650, at *8 (E.D. Cal. July 14, 2010).[25] "The one-year limitations period for PAGA civil penalties begins to toll upon filing notice to the LWDA for a PAGA investigation." *Taylor v. Interstate Grp., LLC,* No. 15-CV-05462-YGR, 2016 WL 861020, at *3 (N.D. Cal. Mar. 7, 2016); *citing Ramirez v. Ghilotti Bros, Inc.,* 941 F.Supp.2d 1197, 1209 (N.D.Cal. 2013) ("PAGA itself provides that the statute of limitations is tolled while a plaintiff exhausts his administrative remedies with [LWDA] prior to suit, which is required by the statute"). For purposes of this removal, Defendants assume that Plaintiff's one-year statute of limitation on his PAGA claims began tolling on April 30, 2018, the date when Plaintiff provided notice to the LWDA. Hearne Dec., Exh. A, Exh. 1 thereto (Initial Notice to LWDA).

### a.    **PAGA Penalties: Failure to Reimburse**

46.    Plaintiff seeks to recover penalties under PAGA on behalf of himself[26] for Defendants' alleged violations of Labor Code Section 2802. FAC, ¶¶ 96-99. Under PAGA, such violations may be penalized at a maximum rate of $100 per initial violation and $200 per subsequent violation. Cal. Labor Code §§ 2699(f), 2802 ("If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for

---

[25] *See also, Taylor v. Interstate Grp., LLC,* No. 15-CV-05462-YGR, 2016 WL 861020, at *5 (N.D. Cal. Mar. 7, 2016)
[26] Plaintiff also seeks to recover PAGA penalties on behalf of putative class members, though for purposes of calculating whether the jurisdictional threshold for removal under Section 1332(a) is satisfied, the potential PAGA penalties with respect to putative class members are not included in the calculation.

each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation).

47.    Here, Plaintiff was paid on a bimonthly basis. Sackewitz Dec., ¶ 7. Defendant required that employee uniforms be laundered on a weekly basis. *Id.,* ¶ 9. Assuming, as Plaintiff alleges, that he was required to bear that expense, Plaintiff may be entitled to PAGA penalties pursuant to Section 2802 for every pay period within the limitations period. Between April 30, 2017 and his termination, Plaintiff worked 47.7 weeks for KBA, which equates to at least 23 pay periods. *Id.,* ¶ 14. Applying the maximum potential penalty amounts to each of these alleged violations, the PAGA penalties associated with this claim total **$4,500** ($100 *times* one initial violation *plus* $200 *times* 22 subsequent violations).

**b.    PAGA Penalties: Unpaid Wages**

48.    Plaintiff also alleges that he should have been (and was not) compensated for time he spent riding the bus to/from the job site. FAC, ¶¶ 19-32. As a result, Plaintiff alleges that, on a weekly basis, he was not compensated for all hours worked…." *Id.* Plaintiff seeks to recover penalties under PAGA for Defendants' alleged violations of Labor Code Section 204. FAC, ¶ 99. Under PAGA, such violations may be penalized at a maximum rate of $100 per initial violation and $200 per subsequent violation. Cal. Labor Code §§ 2699(f), 210 ("If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation").

49.    During the one-year period prior to Plaintiff's provision of notice to the LWDA, KBA issued at least 23 paychecks to Plaintiff. Sackewitz Dec., ¶ 14. Plaintiff contends that *each* of these paychecks was deficient (and therefore a "violation" under Labor Code Section 204) in

that they failed to pay him for all time worked.  FAC, ¶¶ 62-69.  Applying the maximum potential penalty amounts to each of these alleged violations, the PAGA penalties associated with this claim total **$4,500** ($100 *times* one initial violation *plus* $200 *times* 22 subsequent violations).

### c.    PAGA Penalties: Overtime Wages

50.    Plaintiff alleges that in failing to compensate him for all hours worked, Defendants also denied him overtime (and in some cases double time) pay allegedly owed.  FAC, ¶¶ 15-41. As a result, he seeks damages and penalties for unpaid time he allegedly spent each week working in excess of eight (8) hours in a day and/or forty (40) hours in a week.  FAC, ¶ 37.  Under PAGA, such violations may be penalized at a maximum rate of $50 per initial violation and $100 per subsequent violation.  Cal. Labor Code §§ 510, 558(a), § 2699(a) ("(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.").

51.    During the one-year period prior Plaintiff's provision of notice to the LWDA, KBA issued at least 23 paychecks to Plaintiff.  Sackewitz Dec., ¶ 14.  Plaintiff contends that *each* of these paychecks was deficient (and therefore a "violation" under Labor Code Section 210) in that they failed to pay him overtime wages owed.  FAC, ¶ 99.  Again, applying the maximum potential penalty amounts to each of these alleged violations, the PAGA penalties associated with this claim total **$2,250** ($50 *times* one initial violation *plus* $100 *times* 22 subsequent violations).

### d.    PAGA Penalties: Alleged Pay Stub Violations

52.    Plaintiff also seeks civil penalties under PAGA for Defendants' alleged violations of Labor Code Section 226.  FAC, ¶¶ 48-50, 60-65.  Under PAGA, penalties for violations of

Section 226 may be awarded at a maximum rate of up to $250 per initial violation and $1,000 per subsequent violation.    Cal. Labor Code §§ 2699(f), 226.3 ("Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226.")

53.    During the one-year period prior to Plaintiff's provision of notice to the LWDA, KBA issued at least 23 paychecks to Plaintiff. Sackewitz Dec., ¶ 14.  Plaintiff contends that *each of these paychecks was deficient (and therefore a "violation" under Labor Code Section 226).* FAC, ¶¶ 62-69, 99.  Again, applying the maximum potential penalty amounts to each of these alleged violations, the PAGA penalties associated with this claim total **$22,250** ($250 *times* one initial violation *plus* $1,000 *times* 22 subsequent violations).

54.    Adding each of these potential penalties available under PAGA together yields a total of **$33,500.**

### viii.    Attorneys' Fees

55.    District courts in this Circuit routinely hold that in the context of PAGA cases "'removing defendants can reasonably assume plaintiffs are entitled to attorney[s'] fees valued at approximately 25% of projected damages.'" *Olson v. Michaels Stores, Inc.,* No. CV1703403ABGJSX, 2017 WL 3317811, at *3 (C.D. Cal. Aug. 2, 2017) (*quoting Ford v. CEC Entm't, Inc.,* No. CV 14–01420 RS, 2014 WL 3377990, at *6 (N.D. Cal. July 10, 2014)); *see also Willis v. Xerox Bus. Servs., LLC,* No. 1:13–cv–01353–LJO–JLT, 2013 WL 6053831, at *10 (E.D. Cal. Nov. 15, 2013) (adopting defendant's good faith estimate that attorneys' fees award would be 25% of damages)).

56.    Here, the potential recovery for Garcia individually is conservatively estimated at **$ 50,258,** without taking attorneys' fees and/or punitive damages into account. With the inclusion of likely attorneys' fees at 25% of the total recovery, or $12,564, this bumps the running total up to $62,822.

| Category of Damages | Amount in Controversy |
|---|---|
| Unpaid Wages for Travel Time | $ 11,223 |
| Meal Period Penalties | $ 7,807 |
| Unpaid Meal Periods | $ 7,807 |
| Rest Period Penalties | $ 8,178 |
| Wage Statement Penalties | $ 2,050 |
| Waiting Time Penalties | $ 3,960 |
| Business Expense Reimbursement | $ 858 |
| PAGA Penalties | $ 8,375[27] |
| *Subtotal* | *$ 50,258* |
| Attorneys' Fees | $ 12,564 |
| **TOTAL** | **$ 62,822** |

### ix.    Punitive Damages

57.    Based on the most conservative estimates with respect to Plaintiff's claims, Defendants need only demonstrate that an additional $12,179 is placed at issue by virtue of Plaintiff's claim for punitive damages. See FAC, p.23 at 12 (Plaintiff's FAC seeks "[p]unitive

---

[27] $33,500 *times* 25% *equals* $8,375. While there is authority for including the entire amount recoverable under PAGA on behalf of a plaintiff for purposes of calculating the amount in controversy (*see, e.g., Patel v. Nike Retail Servs., Inc.,* 58 F. Supp. 3d 1032, 1048 (N.D. Cal. 2014) (holding that "the entire amount of PAGA penalties attributable to Patel's claims count towards the amount in controversy."); *Thomas v. Aetna Health of Calif., Inc.,* No. 1:10-cv-01906-AWI-SKO, 2011 WL 2173715 (E.D. Cal. June 2, 2011)), in the interests of providing an overly-conservative estimate, Defendants assume, without admitting, that only 25% of potential PAGA penalties may be considered for purposes of determining the amount in controversy. If the entire amount is included, the actual amount in controversy would be significantly higher.

DEFENDANTS' NOTICE OF REMOVAL

damages according to proof"). "The jurisdictional minimum [for diversity jurisdiction] may be satisfied by claims for special and general damages, punitive damages, and attorneys' fees." *Campbell v. Hartford Life Ins. Co.*, 825 F. Supp. 2d 1005, 1008 (E.D. Cal. 2011) (quotation omitted). "A removing defendant may establish probable punitive damages, for example, by introducing evidence of jury verdicts in analogous cases." *Hulse v. Bethesda Lutheran Communities, Inc.*, No. EDCV180262FMOKKX, 2018 WL 1033223, at *3 (C.D. Cal. Feb. 23, 2018) (citation and quotation omitted).

58.    Here, there can be no question that Plaintiff's litany of violations could reasonably generate an award of punitive damages far in excess of $12,179.    In *Bender v. Darden Restaurants, Inc.*, for example, the Ninth Circuit affirmed a jury's punitive damage award of $1.8 million where the only "injury" suffered by plaintiffs was denial of meal and rest breaks on the grounds, *inter alia*, that the award was only 0.3 percent of Red Lobster's estimated net worth. 26 F. App'x 726, 728 (9th Cir. 2002) ("the punitive damages award was properly predicated on the denial of breaks"). On a smaller scale, in *Gamayo v. Drobny Law Offices, Inc.*, plaintiff, a former employee, alleged, among other things, that she was misclassified and denied overtime, meal periods, rest periods, and itemized statements. The jury awarded her $34,755 in total damages—$20,000 of which were punitive in nature. Dkt. No. 34200800005372, 2010 WL 8058308 (Cal. Super. April 16, 2010).    And, in *Marlo v. United Parcel Service, Inc.*, the court, in an employment class action alleging unpaid overtime, awarded punitive damages of $6,604,275—75% of the total $8,805,700 recovery awarded to the plaintiff. Dkt. No. 09-cv-07717 (DDP), 2012 WL 8441462 (C.D. Cal. Nov. 8, 2012); *see also, Quiles v. Parent,* 10 Cal. App. 5th 130, 134, 215 Cal. Rptr. 3d 858, 860 (Ct. App. 2017), *reh'g denied* (Apr. 21, 2017), *review denied,* (July 12, 2017) (In FLSA case, jury originally awarded $350,000 in punitive damages for one employee).

DEFENDANTS' NOTICE OF REMOVAL

x.    **Summary**

59.    Even based on conservative estimates, there can be no doubt or dispute that the amount in controversy meets the jurisdictional threshold of $75,000.

**THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER**

60.    Based on the foregoing facts and allegations, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because:

(a)    the amount in controversy exceeds $75,000, exclusive of interest and costs, and

(b)    the controversy is between citizens of different states

61.    Accordingly, this action is properly removable under 28 U.S.C. §§ 1441 and 1446.

62.    Additionally, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d):

(a)    the amount in controversy exceeds $5 million dollars exclusive of interest and costs;

(b)    is a class action; and

(c)    any member of the class of plaintiffs is a citizen of a state different from any defendant.

63.    Accordingly, this action is properly removable under 28 U.S.C. §§ 1441 and 1446

64.    In addition, the United States District Court for the Eastern District of California is the federal judicial district embracing the Superior Court for the County of Kern, where the suit was originally filed. 28 U.S.C. § 84(b). *See also,* 28 U.S.C. § 1441(a).

65.    True and correct copies of the Summons and Complaint, the FAC, and each Defendant's Answer, are filed concurrently herewith as Exhibits A–E to the Hearne

Declaration.[28]  This constitutes the complete record of all records and proceedings in the state court and are appended hereto as required by 28 U.S.C. § 1446(a).

66.    Upon filing the Notice of Removal, Defendants will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Kern County Superior Court, pursuant to 28 U.S.C. § 1446(d).

Wherefore, Defendants hereby remove this action from the Superior Court of California in and for the County of Kern.

Dated: September 13, 2018

By: _____

Heather D. Hearne
hdh@kullmanlaw.com

**THE KULLMAN FIRM**
A Professional Law Corporation

Attorneys for Defendants
SCHLUMBERGER LIFT SOLUTIONS
LLC, SCHLUMBERGER ROD LIFT, INC.,
and SCHLUMBERGER TECHNOLOGY
CORP.

---

[28] Answers were filed on behalf of each Defendant with the Superior Court on September 12, 2018.  Hearne Dec., ¶¶ 6-8.

DEFENDANTS' NOTICE OF REMOVAL

**PROOF OF SERVICE**

STATE OF LOUISIANA                )
                                  )
PARISH OF EAST BATON ROUGE )

On **September 13, 2018,** I caused the foregoing document(s) described as **Notice of Removal** to be served on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

> Peter R. Dion-Kindem
> The Dion-Kindem Law Firm
> Peter R. Dion-Kindem, P.C.
> 21550 Oxnard St., Suite 900
> Woodland Hills, California 91367
> peter@dion-kindemlaw.com
>
> Lonnie C. Blanchard, III
> The Blanchard Law Group, APC
> 3579 East Foothill Blvd., No. 338
> Pasadena, CA 91107
> lonnieblanchard@gmail.com
>
> Jeff Holmes
> Holmes Law Group, APC
> 3311 East Pico Blvd.
> Los Angeles, CA 90023
> jeffholmesjh@gmail.com
>
> *Attorneys for Plaintiff*

**_X_   VIA OVERNIGHT DELIVERY – FEDERAL EXPRESS**

I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx, with delivery fees paid or provided for, and addressed to the person(s) being serviced.

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct.  Executed on **September 13, 2018**, at Baton Rouge, LA.

*/s/Grace N. Frantz*
GRACE N. FRANTZ

DEFENDANTS' NOTICE OF REMOVAL