1
2
3
4
5
6
7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   CRISTOBAL GARCIA, an individual, on      )   Case No.: 1:18-cv-01261-DAD JLT
     behalf of himself and all others similarly  )
12   situated,                                 )   ORDER GRANTING PLAINTIFF'S MOTION
                                               )   FOR PRELIMINARY APPROVAL OF CLASS
13              Plaintiff,                      )   SETTLEMENT
                                               )
14        v.                                    )   (Doc. 41)
                                               )
15   SCHLUMBERGER LIFT SOLUTIONS, et al.       )
                                               )
16              Defendants.                     )
                                               )
17   _____ )

18          Cristobal Garcia asserts that he and others employed by Defendants Schlumberger suffered

19   wage and hour violations, including lost wages.  Plaintiff now seeks preliminary approval of a class

20   settlement related only the claim for "payment of safety bonuses by the Defendants which were not

21   used in calculating overtime."  (Doc. 41-1 at 6)  Specifically, Plaintiff seeks: (1) conditional

22   certification of the settlement class; (2) preliminary approval of the settlement; (3) appointment of

23   Plaintiff as the class representative; (4) appointment of Peter Dion-Kindem and Lonnie Blanchard as

24   class counsel; (5) approval of the class notice; (6) appointment of Simplurius, Inc. as the settlement

25   administrator; and (7) scheduling for final approval of this partial settlement.

26          The Court has reviewed the proposed settlement between the parties and proposed class notice,

27   as well as the moving papers.  The Court finds the matter suitable for decision without oral arguments,

28   and the motion is taken under submission pursuant to Local Rule 230(g) and General Order 618.

Therefore, the hearing date of July 21, 2020 is **VACATED**.  For the following reasons, Plaintiff's motion for preliminary approval of the class settlement is **GRANTED**.

<u>**FACTUAL AND PROCEDURAL HISTORY**</u>

Plaintiff asserts that he was "employed in Kern County by Defendants as a non-exempt employee."  (Doc. 1-3 at 5, ¶ 1) According to Plaintiff, "Defendants failed to pay [employees] for all hours worked."  (*Id.* at 12, ¶ 32)  For example, he reports the employees were "instructed … to arrive at their base office to perform work and to then board company vehicles that would transport them to a second job location away from their base office," and if employees failed to arrive early enough, they generally would not be permitted to work that day.  (*Id.* at 9, ¶ 20)  He alleges employees were not permitted to clock in "until they reached their assigned field locations," approximately 45 minutes to 1 hour after they arrived at the base camp, although there was a clock at the base office, and were not paid for that time.  (*Id.* at 9-10, ¶¶ 21, 23) In addition, Plaintiff contends the employees were not paid for time at the base office waiting for training courses.  (*Id.* at 11, ¶ 30)

He alleges Defendants also failed to provide "duty-free meal periods in a timely manner." (Doc. 1-3 at 15, ¶ 46) He contends Defendants "failed to provide… meal periods within the first five hours of their work" and "frequently failed to provide Plaintiff and other[s] …with required meal periods of not less than 30 minutes in duration."  (*Id.*, ¶¶ 47-48) Plaintiff reports the employers were not permitted "to leave the workplace during purported meal breaks and did not count their time worked through breaks for regular and overtime wage purposes."  (*Id.*, ¶ 50) He also reports that when employees worked in excess of ten-hour shifts to attend classes after the shift, Defendants provided food during the class but failed to provide a second meal break.  (*Id.*, ¶¶ 51-52) Similarly, Plaintiff asserts employees were not provided "with the required duty-free rest periods… to which they were entitled."  (*Id.* at 17, ¶¶ 58, 60)

According to Plaintiff, Defendants "failed to maintain and furnish Plaintiff and Class members with accurate and complete wage statements regarding their gross wages earned, total hours worked, total net wages earned, the name and address of the entity that is the legal employer, and all applicable hourly rates in effect…"  (Doc. 1-3 at 20, ¶ 67) He contends this failure to provide accurate wage statements resulted in "the non-payment of all their regular and overtime wages and deprived them of

the information necessary to identify the discrepancies in Defendants' reported data."  (*Id.*, ¶ 68)

Furthermore, Plaintiff asserts that Defendants had unlawful policies related to their uniforms, and "failed to indemnify Plaintiff and other Class members for necessary expenditures and bosses incurred by the employees in the direct discharge of their duties."  (Doc. 1-3 at 23, ¶ 83) He alleges employees were "required to wear uniforms and were required to pay for costs associated with the laundering and upkeep of those uniforms."  (*Id.* at 22, ¶ 81)  He asserts employees were also "liable for costs associated with damage of the uniforms," and the "damage liability was broadly described to include normal wear and tear or other accidental, incidental or inadvertent damage that may have occurred during the execution of… duties."  (*Id.*)  Plaintiff reports he and other employees were required to sign a document that acknowledged he was "just using the jacket" but was "responsible for the maintenance of the jacket, including laundering," and "agree[d] to follow the laundry instructions included with the garment."  (*Id.* at 23, ¶ 81)

On June 5, 2018, Plaintiff initiated this action by filing a complaint in Kern County Superior Court, Case No. BCV-18-101388.  (Doc. 1 at 2, ¶ 1)  He filed a First Amended Complaint on August 7, 2018, in which Plaintiff asserted the following claims: (1) failure to pay compensation due, (2) meal period violations, (3) rest break violations, (4) failure to furnish itemized wage statements, (5) failure to pay wages timely upon termination, (6) failure to indemnify business expenses, (7) violation of California Business and Professions Code § 17203, and (8) civil penalties pursuant to the California Private Attorney General Act.  (*See generally* Doc. 1-3 at 4-5, 8-25) He asserted the first seven cause of action were brought "for himself and on behalf of a class and sub-class initially defined as follows:

> <u>Class</u>:  All non-exempt employees of any of the Defendants who, at any time within the period beginning four years prior to the filing of this action through the date of class certification, worked in California.

> <u>Termination Pay Sub-Class</u>:  All members of the Class whose employment terminated at any time within the period three years prior to the filing of this action through the date of certification.

(*Id.* at 6-7, ¶ 8) After Defendants were served with the First Amended Complaint, they filed a Notice of Removal on September 13, 2018, thereby initiating the action in this Court.  (Doc. 1)

The Court issued its Scheduling Order governing the action on November 29, 2018.  (Doc. 12) The parties engaged in discovery, including the production of "extensive payroll and time-keeping

3

1    data." (Doc. 41-1 at 16) Plaintiff was deposed and took the deposition of Defendants' Rule 30(b)(6)

2    designee. (*Id.* at 17)

3       On March 25, 2020, the parties engaged in mediation with Jeffrey Krivis. (Doc. 41-1 at 7)

4    Plaintiff reports that "[a]s a result of a mediator's proposal, the Parties were able to partially resolve the

5    action with respect to the claim for unpaid overtime on safety bonuses and related derivative claims."

6    (*Id.*) Specifically, the parties agree:

7       Plaintiff's first and seventh causes of action survive as to Settlement Class Members
   insofar as they rely upon any theory of recovery other than miscalculation of regular

8       rate/unpaid overtime on safety bonuses. The fifth cause of action shall be resolved,
   settled and released in full, for the Settlement Class Members only. The fourth cause of

9       action shall be resolved, settled and released in full, for the Settlement Class Members
   only, as to any claims arising prior to January 19, 2019.

10

11   (Doc. 41-2 at 38-39, Settlement § 10, ¶ 51) They agree the PAGA penalties of $30,000 "satisfies in full

12   all PAGA penalties … attributable to the first and fourth causes of action or claims alleged therein

13   limited to the time period prior to January 19, 2019, and all penalties attributable to the fifth cause of

14   action or claims alleged therein through the date of Final Approval." (*Id.*) Thereafter, Plaintiffs filed

15   the motion now pending for "preliminary approval of a settlement that only partially resolves certain

16   class action claims." (Doc. 41-1 at 6, emphasis omitted)

17            **THE PROPOSED SETTLEMENT**

18      Pursuant to the proposed settlement ("the Settlement"), the parties agree to a gross settlement

19   amount of $525,000.00 for the class defined as follows:

20      All non-exempt employees of Schlumberger Lift Solutions LLC or Schlumberger
   Rod Lift, Inc. who do not opt out of the settlement and who, at any time within the

21      period beginning June 5, 2014 and ending on January 19, 2019 ("Class Period"), worked
   in California and received a safety bonus by Schlumberger Lift Solutions LLC or

22      Schlumberger Rod Lift, Inc. pursuant to a safety bonus program of Schlumberger Lift
   Solutions LLC or Schlumberger Rod Lift, Inc. at any time within the Class Period.

23

24   (Doc. 41-1 at 6; Doc. 41-2 at 20, Settlement ¶ 6) Defendants agree to deposit the funds necessary "to

25   make all payments approved by the Court" following the final approval and fairness hearing. (*See id.*

26   at 21-22, 29, Settlement ¶¶ 15, 40)

27   **I.**   **Payment Terms**

28      The settlement fund will cover payments to class members with additional compensation to the

Class Representative.  (Doc. 41-2, Settlement ¶ 18) In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and costs, to the Settlement Administrator, and the California Labor & Workforce Development Agency.  (*Id.*)  Specifically, the settlement provides for the following payments from the gross settlement amount:

- The Class Representative will receive an incentive award up to $7,500;

- Class counsel will receive $175,000 for attorneys' fees, which equals 33.33% of the gross settlement amount, and $20,000 for costs;

- The California Labor and Workforce Development Agency shall receive $22,500 from the total PAGA payment of $30,000; and

- The Settlement Administrator will receive up to $6,000 for fees and expenses.

(*Id.* at 7, Settlement ¶¶ 21-26) After these payments are issued, the remaining money ("Net Settlement Amount") will be distributed as settlement shares to Class Members.  (*Id.* at 22, ¶ 18)

Payments from the settlement fund "will be divided among three gross Sub-funds: the Overtime Sub-fund, the Wage Statement Sub-fund, and the 203 Sub-fund," and calculated as follows:

**Overtime Sub-fund**: The gross Overtime Sub-fund amount will be calculated by multiplying the total number of safety bonuses received by the Class Members during the Class Period by $4.00. Defendants' records show that between June 5, 2014 and January 19, 2019, approximately 1,337 safety bonus payments were issued to Class Members.  Based on pay records produced by Defendants in this action, Plaintiff's counsel estimates that the average amount of unpaid overtime on the average bonus payment is approximately $10.59. The gross Overtime Sub-fund will be calculated by multiplying the total number of safety bonus payments made during the Class Period by $4.00, which totals approximately $5,348. The net Overtime Sub-fund will be calculated by reducing the gross Overtime Sub-fund by the same percentage that the Net Settlement Amount bears to the Total Settlement Amount. The net Overtime Sub-fund will be distributed to the Settlement Class Members on a pro rata basis based on the number of safety bonuses they received during the Class Period, as reflected in Defendants' records.

**Wage Statement Sub-fund**: The gross Wage Statement Sub-fund will be calculated by multiplying the total number of safety bonuses received by the Class Members during the period from June 5, 2015 to January 19, 2019 by $50.00, which calculation is based on the assumption that there was one wage statement for each safety bonus paid. Defendants' records show that between June 5, 2015 and January 19, 2019, approximately 1,240 safety bonus payments were issued to Class Members. The gross Wage Statement Sub-fund will be calculated by multiplying the total number of safety bonus payments made between June 5, 2015 and January 19, 2019 by $50.00, which totals $62,000. The net Wage Statement Sub-fund will be calculated by reducing the gross Wage Statement Sub-fund by the same percentage that the Net Settlement Amount bears to the Total Settlement Amount. The Wage Statement Sub-fund will be distributed to Settlement Class Members based on the number of safety bonuses they received during the period from June 5, 2015 to January 19, 2019.

**203 Sub-fund**: The gross 203 Sub-fund will be calculated by subtracting the gross Overtime Sub-fund and the gross Wage Statement Sub-fund from $525,000. The net 203 Sub-fund will be calculated by reducing the gross 203 Sub-fund by the same percentage that the Net Settlement Amount bears to the Total Settlement Amount. The net 203 Sub-fund will be distributed on a pro rata basis to Settlement Class Members terminated between June 5, 2014 and June 25, 2020. According to counsel for Defendants, there are approximately 174 class members in Overtime Sub-fund class who have been terminated between June 5, 2014 and May 22, 2020.

(Doc. 41-1 at 9-10; *see also* Doc. 41-2 at 32-34, Settlement § 6, ¶ 46) Thus, the exact each settlement class member will receive depends on which, and how many, sub-funds they are entitled to, and the number of class members receiving the funds.

## II.    Releases

The Settlement provides that Plaintiffs and Class Members, other than those who elect not to participate in the Settlement, at the time final judgment is entered, shall release Defendants from several claims in the First Amended Complaint.  Specifically, the release for class members provides:

"Class Released Claims" are the claims of the Class Members only for unpaid overtime on safety bonuses (related to first cause of action and seventh cause of action), all claims for waiting time penalties under 203 (fifth cause of action) in full as to Class Members who are terminated on or prior to June 25, 2020 and all claims for wage statement penalties under Section 226 (fourth cause of action) between June 5, 2015 and January 19, 2019.

(Doc. 41-2 at 38, Settlement ¶ 51) With these releases, the parties also agree:

Plaintiff's first and seventh causes of action survive as to Settlement Class Members insofar as they rely upon any theory of recovery other than miscalculation of regular rate/unpaid overtime on safety bonuses. The fifth cause of action shall be resolved, settled and released in full, for the Settlement Class Members only. The fourth cause of action shall be resolved, settled and released in full, for the Settlement Class Members only, as to any claims arising prior to January 19, 2019.

(*Id.*)

## III.    Objections and Opt-Out Procedure

Any class member who wishes may file objections or elect not to participate in the Settlement. (Doc. 41-2 at 50, Settlement § 12, ¶ 53) The Notice of Proposed Settlement ("the Notice") explains the procedures object to the settlement, request exclusion from the settlement, or dispute the employment information.  (Doc. 41-2 at 52, 57-59) The Notice also explains the claims that are released as part of the Settlement.  (*Id.* at 57)

6

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

### I.      Conditional Certification of a Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a).  Under the terms of the Settlement, the proposed class is comprised of:

> All non-exempt employees of Schlumberger Lift Solutions LLC or Schlumberger Rod Lift, Inc. who do not opt out of the settlement and who, at any time within the period beginning June 5, 2014 and ending on January 19, 2019 ("Class Period"), worked in California and received a safety bonus by Schlumberger Lift Solutions LLC or Schlumberger Rod Lift, Inc. pursuant to a safety bonus program of Schlumberger Lift Solutions LLC or Schlumberger Rod Lift, Inc. at any time within the Class Period.

(Doc. 41-2 at 20, Settlement § 1, ¶ 6) The "Class Period" is defined as the period from June 5, 2014 to January 19, 2019.  (*Id.* at 31, ¶ 9) The parties agree no other non-exempt employees of Defendants shall be considered class members.  (*Id.* at 20-21, ¶ 6)  Plaintiff seeks conditional certification of this settlement class pursuant to Fed. R. Civ. P. 23(c)(1), under which the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *See Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)).

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate … compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b).  *Narouz v.*

1    *Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

2         **A.     Rule 23(a) Requirements**

3         The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed

4    by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147,

5    155-56 (1982).  Certification of a class is proper if:

6         (1) the class is so numerous that joinder of all members is impracticable; (2) there are
          questions of law or fact common to the class; (3) the claims or defenses of the
7         representative parties are typical of the claims or defenses of the class; and (4) the
          representative parties will fairly and adequately protect the interests of the class.
8

9    Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality,

10   typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

11                      1.     Numerosity

12        A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P.

13   23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute

14   limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980).  Although there is not a

15   specific numerical threshold, joining more than one hundred plaintiffs is impracticable.  *See Immigrant*

16   *Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002)

17   ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained

18   class members . . . and listing thirteen cases in which courts certified classes with fewer than 100

19   members").  Here, Plaintiff reports "there are approximately 262 class members."  (Doc. 41-1 at 11,

20   citing Doc. 41-2 at 9, Dion-Kindem Decl. ¶ 33) Therefore, the Court finds the numerosity requirement

21   is satisfied.

22                      2.     Commonality

23        Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

24   Commonality "does not mean merely that [class members] have all suffered a violation of the same

25   pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 564 U.S.

26   at 350. Plaintiff asserts there are common questions of law and facts in this case, because the class

27   members were subjected to the same payment policies as employees of Defendants.  (*See* Doc. 41-1 at

28   12) Specifically, Plaintiff contends common questions of law and fact to the class include:

• Whether Defendants' failure to include safety bonuses in the calculation of overtime due employees resulted in an underpayment of compensation due such employees.

• Whether Defendants failure to include safety bonuses in the calculation of overtime due employees resulted in the provision of inaccurate wage statements.

• Whether Defendants' failure to pay overtime due was willful for purposes of Section 203.

(*Id.*) Accordingly, the Court finds the commonality requirement is satisfied for purposes of settlement.

### 3.     Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when the named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Plaintiff reports the was "employed in Kern County by Defendants as a non-exempt employee." (Doc. 1-3 at 5, ¶ 1) Plaintiff reports that he "received non-discretionary bonus payments for periods during which [he] worked overtime but was not paid overtime on such payments." (Doc. 41-4 at 2, Garcia Decl. ¶ 4) Because Plaintiff was subjected to the same polices and payment procedure as the Settlement Class Members, the typicality requirement is satisfied.

### 4.     Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the

named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

### a.   Proposed class representative

Plaintiff seeks appointment as the Class Representative of the Settlement Class. (*See* Doc. 41-1 at 13-14) Plaintiff asserts that he does not have any conflicts of interest with other class members.  (*Id.* at 13, citing Doc. 41-4 at 2, Garcia Decl. ¶ 6)  In addition, Plaintiff asserts: "I have and will consider the interests of the other Class Members just as I would my own interests and understand that I may need to put the interests of the other Class Members before my own." (Doc. 41-4 at 2, Garcia Decl. ¶ 5) Thus, it appears Plaintiff will fairly and adequately represent the interests of the class.

### b.   Proposed class counsel

Lonnie C. Blanchard, III and Peter R. Dion-Kindem seek appointment as counsel for the settlement class.  (Doc. 41-2 at 20, Settlement § 1, ¶ 5) Counsel report they do not have any conflicts of interest with the class members and "are experienced in handling class action lawsuits."  (Doc. 41-1 at 13-14, citing Doc. 41-2 at 2-5, Dion-Kindem Decl., ¶ 5-10; Doc. 41-3 at 2-5, Blanchard Decl., ¶¶ 4-6)  In addition, Mr. Blanchard reports "[t]he focus of [his] practice is almost exclusively civil litigation," including "extensive experience in wage and hour litigation, including class actions." (Doc. 41-3 at 2, ¶ 4) Similarly, Mr. Dion-Kindem asserts he has "extensive experience litigating wage and hour and FCRA class actions, employee rights' claims, and other claims in federal and state court."  (Doc. 41-2 at 2, ¶ 8) Both attorneys identify numerous class action cases in which they were counsel of record.  (*See* Doc. 41-2 at 2-5; Doc. 41-3 at 2-3) Defendants do not oppose their appointment or assert they are inadequate to represent the interest of the class. Therefore, the Court finds Mr. Blanchard and Mr. Dion-Kindem satisfy the adequacy requirement.

### B.   Certification of a Class under Rule 23(b)(3)

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiff asserts certification of the settlement class is appropriate under Rule 23(b)(3), which requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for

1   fairly and efficiently adjudicating the controversy."

2       Plaintiff argues the predominance requirement is satisfied because "[t]he elements of Plaintiff's

3   substantive claims are subject to proof by generalized, common evidence" given the policies of

4   Defendants related to calculation of overtime.  (Doc. 41-1 at 14) Plaintiff asserts the superiority

5   requirement is met "because individual litigation is not feasible and the claims are manageable." (*Id.* at

6   15, emphasis omitted) Plaintiff also contends there has been "no interest by class members to

7   individually litigate" and "absent a class action, most class members simply could not otherwise

8   enforce their rights." (*Id.* at 16) Therefore, the Court finds conditional certification of the proposed

9   Settlement Class is proper under Rule 23(b)(3).

10  ## II.    Evaluation of the Settlement Terms

11      Settlement of a class action requires approval of the Court, which may be granted "only after a

12  hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

13  Approval is required to ensure settlement is consistent with Plaintiffs' fiduciary obligations to the class.

14  *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit identified

15  several factors to determine whether a settlement agreement meets these standards, including:

16      the strength of plaintiff's case; the risk, expense, complexity, and likely duration of
        further litigation; the risk of maintaining class action status throughout the trial; the
17      amount offered in settlement; the extent of discovery completed, and the stage of the
        proceedings; the experience and views of counsel; the presence of a governmental
18      participant;[1] and the reaction of the class members to the proposed settlement.

19  *Staton*, 327 F.3d at 959 (citation omitted).  A court should consider whether settlement is "the product

20  of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing

21  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).  In reviewing the settlement "[t]he

22  court need not reach any ultimate conclusions on the contested issues of fact and law which underlie

23  the merits of the dispute."  *Class Plaintiffs*, 955 F.2d at 1291(quotations, citation omitted).

24      ### A.    Strength of Plaintiff's Case

25      Plaintiffs raised eight causes of action that the factfinder would be required to evaluate on the

26  merits. (*See generally* Doc. 1-3) The proposed settlement of many of these claims was reached

27  _____

28      [1] Because there is not a government participant in this action, though PAGA penalties will be paid, this factor does
    not weigh in the Court's analysis.

                                            11

following the exchange of written discovery and taking depositions, which allowed the parties to assess the strengths and weaknesses of the action. (*See* Doc. 41-1 at 16-17) Accordingly, this factor weights in favor of preliminary approval of the Settlement.

### B.      Risks, Expense, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the settlement were to be rejected, the parties would have to engage in further litigation related to the resolved claims, including seeking class certification and discovery on the issue of damages. Plaintiff contends that the partial settlement—including "significant settlement payments to the Class now"— is favorable "to risking (i) the Court's denial of certification; and (ii) an unfavorable result on the merits on summary judgment or at trial and/or on an appeal, a process that can take several more years to litigate." (Doc. 41-1 at 19)

With regard to the claims resolved through this partial settlement, Plaintiff contends "some of the specific risks related to each of the claims" include:

> • **Subclass 1 - Overtime Sub-class:** Defendants contend that the safety bonuses were "discretionary" and therefore not includable in calculating the regular rate of pay. (29 U.S.C. § 207(e)(1).) (Dion-Kindem Decl., ¶ 44.)
>
> • **Subclass 2 – Wage Statement Sub-class:** Defendants contend that because there was no substantive violation with respect to the payment of overtime on the safety bonuses, there are no derivative wage statement violations and that any violation, if proven, was not "knowing and intentional" as required by Section 226(e). (Dion-Kindem Decl., ¶ 44.)
>
> • **Subclass 3 – 203 Sub-class:** Defendants contend that any violation is subject to a good-faith defense. "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." (Cal. Code Regs., tit. 8, § 13520). (Dion-Kindem Decl., ¶ 44.)

(Doc. 41-1 at 19)

As Plaintiff observes, the time and expense of continued litigation related to these claims could outweigh any additional recovery. On the other hand, the proposed settlement provides for immediate recovery on claims presented by Plaintiff on behalf of the class. Due to the acknowledged risk of the claims of class members, this factor weighs in favor of preliminary approval of the Settlement.

### C.      Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."  *Id.*, 688 F.2d at 625, 628.

The proposed gross settlement amount is $525,000.00.  (Doc. 41-2 at 24, Settlement § 1, ¶30)  Though, generally, orders approving class settlements compare the settlement amount to the estimated total maximum liability, the parties have not identified the total maximum liability for the settled claims.  (*See* Doc. 41-1 at 17-18)  Nevertheless, given the time expended by parties with discovery and mediation, it appears the parties agree this amount reflects a fair compromise as to the resolved causes of action.  Indeed, in the Settlement Agreement, the parties indicate terms "are the result of lengthy, intensive arms-length negotiations."  (Doc. 41-2 at 44, ¶ 58)  Accordingly, the Court finds the amount offered supports preliminary approval of the Settlement.

### D.      Extent of Discovery Completed and Stage of the Proceedings

Plaintiff contends that the parties "conducted sufficient informal and formal discovery to be sufficiently familiar with the facts, merits, and risks of Plaintiff's claims."  (Doc. 41-1 at 7)  According to Plaintiff, during discovery he received "extensive payroll and time-keeping data" from Defendants.  (*Id.* at 16)  In addition, Plaintiff was deposed and took the deposition of Defendants' Rule 30(b)(6) designee.  (*Id.* at 17)

Based upon the information provided, the parties made informed decisions, which lead to partial resolution of the matter with the assistance of a mediator.  Consequently, this factor supports preliminary approval of the Settlement.

### E.      Experience and Views of Counsel

As addressed above, Plaintiff's counsel are experienced in class action litigation.  In addition, "Class Counsel believe that the [Settlement] is fair, reasonable, adequate, and is in the best interest of the Class in light of all known facts and circumstances."  (Doc. 41-2 at 25, Settlement ¶ 32)  In addition,

Defendants indicated they "desire fully, finally, and forever to settle, compromise, and discharge all Claims." (*Id.* at 26, ¶ 34) These opinions of counsel are entitled to significant weight, and support approval of the settlement agreement. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

### F.   Reaction of Class Members to the Proposed Settlement

Plaintiff has agreed to the terms of Settlement Agreement. (Doc. 41-2 at 48) However, because Class Members have not yet received notice, this factor shall be revisited during and after the hearing for final approval of the Settlement.

### G.   Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. In the settlement agreement, the parties indicate terms "are the result of lengthy, intensive arms-length negotiations." (Doc. 41-2 at 44, ¶ 58) Furthermore, the parties utilized an impartial mediator, and were able to reach the resolution "[a]s a result of a mediator's proposal." (Doc. 41-1 at 7) Thus, it appears the agreement is the product of non-collusive conduct, and this factor weighs in favor of preliminary approval of the settlement.

### H.   Attorneys' Fees

Class counsel has requested attorneys' fees up to $175,000.00, which is one third of the settlement fund. (Doc. 41-2 at 37, Settlement § 9, ¶ 49) The parties agree that "[i]f less than these amounts are approved by the Court, then the Net Settlement Amount will be adjusted accordingly." (*Id.*) The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**. *Hensley v. Eckerhart*, 461 U.S. 424, 424

(1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Because the percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily. The Court will determine the exact amount of the fee award upon application by Class Counsel for approval of fees.

## I.      Class Representative Enhancement

The Settlement provides that "Plaintiff may seek a payment of $7,500 as an enhancement for the Representative Plaintiff's services." (Doc. 41-2 at 36, Settlement § 7, ¶ 48) Incentive awards, or enhancements, for class representatives are not to be given routinely by the Court. In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted). In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

The Settlement explains the enhancement is to be given to Plaintiff for "his service on behalf of the Class, including filing the Complaint, participating in discovery, gathering and/or providing information, responding to other discovery, meeting with Class Counsel, assisting in preparing litigation strategy, submitting to deposition, and assuming the risks of costs and hardships that were not agreed to or experienced by other Class Members." (Doc. 41-2 at 36, ¶ 48) Plaintiff reports:

> I have spent many hours of my time in connection with this case to date. The activities I have performed have included, but have not been limited to: obtaining legal counsel, speaking with my legal counsel on countless occasions, both in person and over the phone, assisting them in gathering information, reviewing documents, giving information for pleadings filed by my lawyers, assisting my lawyers in locating witnesses and talking to witnesses, giving information for and reviewing damage calculations, submitting to two days of deposition by Defendants, signing documents and making myself available to communicate with my lawyers during a full day of

> mediation. I have also spent time carefully reviewing the Settlement and other case-related documents on my own and with my counsel to make sure that the Settlement and other work my attorneys performed are in the best interest of the Settlement Class. Further, I anticipate I will incur additional time even after the Court grants preliminary approval of the Settlement. I believe I have been diligent and acted above and beyond that of which is expected of a Class Representative throughout all stages of litigation.

(Doc. 41-4 at 3, Garcia Decl. ¶ 9)

Significantly, there is no evidence related to the actual number of hours Plaintiff spent working with Class Counsel on this action, or even an estimate of the number of meetings Plaintiff[2] had with Class Counsel. Without additional information the Court is unable to evaluate the reasonableness of this requested award. In seeking final approval, **Plaintiff must provide specific and unambiguous evidence supporting the requested enhancement.** Furthermore, Plaintiff will incur additional time as the matter is only *partially* resolved. Nevertheless, given the flexibility for an award *up to* $7,500 to the class representatives, the request for approval of a class representative enhancement is preliminarily approved.

## APPOINTMENT OF SETTLEMENT ADMINISTRATOR

The parties have agreed upon and propose that the Court appoint Simpluris, Inc., ("Simpluris") to serve as the Settlement Administrator.  (Doc. 41-2, Settlement ¶ 28) Under the terms of the proposed Settlement:

> The duties of the Settlement Administrator shall include, without limitation: the printing and mailing of court-approved Notice Form to Class Members; taking all steps as are reasonably necessary to ensure Class Members timely receive a Notice including conducting a National Change of Address search before mailing the Notice Form; communicating with Class Members and others regarding any reasons as deemed reasonably necessary by the Settlement Administrator in order to ensure that the highest percentage of Class Members receive notice of this Joint Stipulation; the utilization of agreed methods to ensure the most up-to-date and accurate addresses for Class Members; conducting address searches on all returned, undelivered mail and re-mailing Notices Forms to Class Members for whom addresses are found; the providing of toll-free, live operator telephone support to receive telephone calls from Class Members or others regarding the claims process; the maintenance of appropriate databases to fulfill its duties; the receipt and control of all returned Notices Forms, requests for opt-out, and objections; the calculation of the Settlement Shares; the preparation of all necessary reports listing the Settlement Shares; periodic reporting to Class Counsel and Defendants' Counsel; the timely issuance and, if necessary, re-issuance of Settlement Share checks to Settlement Class Members;

---

[2] It is unlikely that there have been so many meetings with counsel that they can properly be described as "countless." Indeed, the Court would be surprised if counsel have not documented every conversation in their billing records such that they can, in fact, be counted.

conducting address searches for all Settlement Share checks that are returned as undeliverable…

(Doc. 41-2 at 38, ¶ 39) In anticipation of the administration expenses, $6,000.00 from the settlement fund has been designated for the Settlement Administrator.  (*Id.* at 34, ¶46(e). Based upon the recommendation and request of the parties, Simpluris is appointed as the Settlement Administrator.

## APPROVAL OF CLASS NOTICE

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## I.    Content of the Notice

Plaintiff has submitted the proposed Notice form.  (Doc. 41-2 at 52-62) Upon review of the proposed Notice, the Court finds the content is adequate.  It provides information regarding the background of the action and claims asserted by Plaintiff that have resolved as a result of this partial settlement.  The Notice also explains the terms and provisions of the Settlement, including payments from the gross settlement fund, and how payments will be received.  (*See id.* at 53-55) In addition, the Notice explains the right to object to the Settlement or request exclusion and will include the applicable deadlines.  (*Id.* at 52, 57-59) Finally, the Notice Packet will provide an estimate of the Class Member's share based upon the number of pay periods employed by Defendant and explains the effect of the judgment and settlement, including the claims released.  (*Id.* at 56-57)

## II.    Method and Administration of Notice Packet

Within thirty days of the date of service of this Order, "Defendants shall provide the Settlement

17

Administrator with the following information for each Class Member: name, last-known address, dates of employment, and social security number, if available to Defendants." (Doc. 41-2 at 30, Settlement §5, ¶ 42) If any of this information is unknown, "Defendants will so advise Class Counsel and the Parties will endeavor prior to the date for submitting data to the Settlement Administrator to use available means to reconstruct, if possible, the data for the Class Member, or otherwise agree on the data for a Class Member. If the Parties are unable to reconstruct the data or otherwise agree, the Parties will submit the dispute to the Court." (*Id.*)

Within fifteen days of receiving this data, the Settlement Administrator will mail the Notice to all Class Members. (Doc. 41-2 at 30, ¶ 43) For any Notice returned due to an incorrect address, the Settlement Administrator will search for a more current address and re-mail the Notice. (*Id.*) "The Settlement Administrator shall provide updates to Class Counsel and Defendants' Counsel at least every week of (1) the number of undeliverable notices; (2) the number and names of opt-outs; and (3) any objections or disputes by Class Members." (*Id.* at 31, ¶ 43)

Class members who elect not to participate in the Settlement will have 60 days from date the Notice is mailed to submit a written request for exclusion from the Settlement. (Doc. 41-2 at 23, ¶19) The written notice must: (1) "contain the name, address, social security number of the person seeking to opt-out, and home telephone number, if any;" (2) "be returned to the Settlement Administrator at the specific address referenced in the Notice;" and (3) "must be postmarked (if mailed) or received (if otherwise delivered) by the Settlement Administrator on or before the applicable Opt-Out Deadline." (*Id.* at 31, ¶ 44) Class Members who properly completes a written request for exclusion will not be entitled to a settlement share; will not be bound by the terms of the settlement agreement; and will not have the "right to object, appeal, or comment thereon." (*Id.*)

Similarly, Class Members who wish to object to the Settlement have 60 days to submit a written objection to the Settlement Administrator. (Doc. 41-2 at 23, ¶ 20) Any objection "must be signed and must contain the Class Member's name, the address of counsel, if any, and the name of and the case number for the Action." (*Id.* at 40, ¶ 53) The objector must clearly state the grounds for the objection. (*Id.*) If the agreement is approved by the Court, any objecting Class member will be bound by the terms and final judgment "in the same way and to the same extent as a Class Member who does not

object." (*Id.* at 40-41, ¶ 53) Class Members will not be permitted to make objections at the Final Approval and Fairness Hearing unless they have submitted a timely written objection that includes notice of intention to appear.

Prior to the hearing for final approval, the Settlement Administrator shall serve the parties and the Court with a declaration due diligence setting forth its compliance with its obligations under the Agreement.  (Doc. 41-2 at 31, Settlement § 5, ¶ 43) The declaration shall include the number of Class Members to whom Notices were sent and the number of Class Members to whom the Notices were delivered.  This declaration shall be filed with the Court with the motion for final approval of the settlement.

## III.     Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date and location of the hearing for Final Approval of Class Settlement.  In addition, the Notice must be modified to include the deadlines for requesting exclusion, any opposition to the Settlement, and disputes of the employment information for the class member.

If Plaintiff intends to issue a Spanish language translation of the Notice, he is informed that this Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable.  The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement.  Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)).  Here, the proposed settlement agreement satisfies this test. Accordingly, the Court **ORDERS**:

1.     The hearing date of July 21, 2020 is **VACATED**;

2.      Plaintiff's request for conditional certification of the Settlement Class is **GRANTED**, and the class is defined as follows:

All non-exempt employees of Schlumberger Lift Solutions LLC or Schlumberger Rod Lift, Inc. who do not opt out of the settlement and who, at any time within the period beginning June 5, 2014 and ending on January 19, 2019 ("Class Period"), worked in California and received a safety bonus by Schlumberger Lift Solutions LLC or Schlumberger Rod Lift, Inc. pursuant to a safety bonus program of Schlumberger Lift Solutions LLC or Schlumberger Rod Lift, Inc. at any time within the Class Period.

3.      Preliminary approval of the parties' proposed settlement agreement is **GRANTED**;

4.      The propose notice plan is **APPROVED**;

5.      Cristobal Garcia is **APPOINTED** the Class Representative for the Settlement Class;

6.      Lonnie Blanchard, III and Peter Dion-Kindem are **APPOINTED** Class Counsel;

7.      Simpluris, Inc. is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

8.      The Class Representative enhancement request for Plaintiff is **GRANTED** preliminarily up to the amount of $7,500, subject to a petition and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9.      Class Counsel's request for fees of not to exceed 33 1/3% of the gross settlement amount and costs up to $20,000 is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

10.      The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **November 2, 2020**;

11.      Costs of settlement administration shall not exceed $6,000;

12.      The proposed Notice is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice with the required revisions for the Court's approval within five days of the date of service of this Order;

13.      Defendants **SHALL** provide the Settlement Administrator with the Class Data no later

than within thirty days of this Order, or no later than **August 17, 2020**;

14.    The Settlement Administrator **SHALL** mail the approved Class Notice Packet no later than **September 1, 2020**;

15.    A Class Member who wishes to be excluded from settlement shall postmark the Opt-Out request no later than **October 31, 2020**;

16.    Any objections to or comments on the Settlement Agreement must be submitted to the Settlement Administrator no later than **October 31, 2020**;

17.    A Final Approval and Fairness Hearing is SET for **November 23, 2020** at 9:00 a.m. at the United States Courthouse located at 510 19th Street, Bakersfield, California.  At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members.  The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees;

18.    Class Members may appear at the hearing on **November 23, 2020**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award.  For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

19.    <u>The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court</u> on or before **November 2, 2020**;

20.    The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and

///
///
///
///

21.     The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **July 15, 2020**                          **/s/ Jennifer L. Thurston**
                                               UNITED STATES MAGISTRATE JUDGE